# UNITED STATES DISTRICT COURT
## for the
### Southern District of California

**FILED**
10/15/2021
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY   vyc   DEPUTY

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.   21MJ8853
iPhone 6s )
With no other identifying numbers or features )
FPF # 2021250300120602 - Line Item #1 )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the   SOUTHERN   District of   CALIFORNIA  , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952, 960 and 963 | Importation of a Controlled Substance; Conspiracy to Commit the Same |

The application is based on these facts:

See Attached Affidavit of Homeland Security Investigations Special Agent Franco Polo, incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Franco Polo, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by   telephone   *(specify reliable electronic means)*.

Date:   10/14/2021

*Judge's signature*

City and state:   El Centro, California         HON. RUTH BERMUDEZ MONTENEGRO, U.S. MAG. J.
*Printed name and title*

# ATTACHMENT A-1

PROPERTY TO BE SEARCHED

The following property is to be searched:

    iPhone 6s

    With no other identifying numbers or features

    FPF # 2021250300120602 Line Item 1

    ("**Target Device 1**")



currently in the evidence vault located at 2051 N. Waterman Ave. El Centro, California, 92243.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the Target Devices described in Attachments A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.  The seizure and search of the Target Devices shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from Target Devices will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of July 21, 2021, up to and including August 21, 2021:

a. tending to indicate efforts to import methamphetamine or some other federally controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or some other federally controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

# AFFIDAVIT

I, Special Agent Franco Polo, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic devices:

    a. iPhone 6s
       With no other identifying numbers or features
       FPF # 2021250300120602 - Line Item #1
       ("**Target Device 1**")

    b. iPhone 7
       With no other identifying numbers or features
       FPF # 2021250300120601 – Line item #4
       ("**Target Device 2**")

(collectively the "**Target Devices**") as further described in Attachment A-1 and A-2, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960, and 963 as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Alina Miranda Garcia ("Defendant 1") and George Zaragoza ("Defendant 2") for importing approximately 1.94 kilograms (4.27 pounds) of methamphetamine from Mexico into the United States. The Target Devices are currently in the evidence vault located at 2051 N. Waterman Ave. El Centro, California, 92243.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Devices, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I am a Special Agent with the United States Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), within the Department of Homeland Security ("DHS"). I have been employed as an HSI Special Agent since

August 2019. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code. I am empowered by law to conduct investigations and to make arrests for felony offenses enumerated in Title 18 of the United States Code, Section 2516. I am cross-designated and have the authority to conduct Title 21 investigations and enforcement activities. I am currently assigned to the HSI Office of the Assistant Special Agent in Charge, in Calexico, California.

4. Prior to my employment with HSI, I was a Deportation Officer with ICE, Enforcement and Removal Operations ("ERO") for over 3 years. As a Deportation Officer, I conducted legal research to support decisions on removal cases and assisted attorneys in representing the government in court actions. I participated in operations to identify, locate and arrest individuals who were in violation of the Immigration and Nationality Act (INA).

5. Prior to my employment with ERO, I was a United States Border Patrol Agent in San Diego, California for over 9 years. As such, I am familiar with the methods employed by smuggling and trafficking organizations to conduct their business, including, but not limited to, their methods of smuggling and trafficking humans, their use of telephones and their use of code words to conduct their transactions. During this time, I was directly involved as a case agent and have assisted other agents on several criminal investigations related to money laundering, kidnapping, alien smuggling and drug smuggling. These investigations led to the successful criminal prosecution of offenses at the state and federal level.

6. During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

7. I am aware that it is common practice for narcotics traffickers to work in

concert utilizing cellular telephones. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the Calexico Ports of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within the United States.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

    a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substance from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

9. On August 21, 2021, at approximately 4:45 a.m., Alina Miranda GARCIA (GARCIA) and George ZARAGOZA (ZARAGOZA), applied for entry into the United States at the Calexico, California West Port of Entry vehicle lanes. GARCIA was the driver and ZARAGOZA was the passenger in a 2007 grey Toyota Camry (TOYOTA) bearing California license plates 6BME055.  In the vehicle primary lane, Customs and Border Protection Officer (CBPO) K. Diaz took a negative Customs declaration from both GARCIA and ZARAGOZA.  GARCIA stated the TOYOTA belonged to her.  Both ZARAGOZA and GARCIA told CBPO Diaz the purpose of their travel to Mexico was to celebrate their anniversary and that they had spent the night in a hotel.  CBPO Diaz noticed they had no clothes for their overnight stay. CBPO Diaz elected to refer both GARCIA and ZARAGOZA along with the vehicle for further inspection.

10. In the secondary area, CBPO Diaz obtained a second negative Customs declaration from both ZARAGOZA and GARCIA.  CBPO Diaz further inspected the TOYOTA and requested Canine Enforcement Officer (CEO) Mendez to screen the TOYOTA with his Human/Narcotics Detector Dog (HNDD).  The HNDD alerted to the

vehicle radio/dash area. CEO Mendez advised CBPO Diaz of the alert.

11. ZARAGOZA and GARCIA were brought in for a pat down. During the pat down, CBPOs located Target Device 1 on ZARAGOZA and Target Device 2 on GARCIA.

12. Further inspection of the TOYOTA led to the discovery of one (1) package, wrapped in black tape, concealed behind the dashboard of the vehicle. Four (4) additional packages, wrapped in black tape, were subsequently discovered concealed behind the TOYOTA's radio. In total, five (5) packages were found in the vehicle by CBPOs.

13. CBPO E. Bosquet field tested one of the packages, which contained a crystal-like substance. The substance in that package tested positive for the properties of methamphetamine.

14. A total of approximately 1.94 kilograms (4.27 pounds) of methamphetamine were found in the TOYOTA. GARCIA was placed under arrest thereafter by CBPO Diaz. As CBPO Diaz was walking away from GARCIA, after being placed under arrest, ZARAGOZA voluntarily stated, "she is unaware."

15. GARCIA was advised of her Constitutional rights in Spanish, acknowledged that she understood each right and elected to speak with Special Agents from Homeland Security Investigations. The interview started at approximately 11:51 a.m. GARCIA stated she met ZARAGOZA in February of 2021 through a cousin and stated they have been dating each other for about six months. GARCIA stated ZARAGOZA has helped her stop using M-30 pills. GARCIA stated ZARAGOZA lives with his grandmother and manages car washes in Cathedral City, California at an auto mall. GARCIA stated ZARAGOZA is a good person. GARCIA stated her grandmother purchased the TOYOTA for her (GARCIA) for about eight or ten thousand dollars and she (GARCIA) was paying her grandmother back.

16. During the interview, GARCIA stated that, while they were in Mexico before their arrest, she ran into someone she did not know and booked a second room for an unknown male (UM) whom she and ZARAGOZA met at the hotel. GARCIA stated the UM did not have identification. GARCIA stated she put the room in her name, but the UM

actually paid for the room. The UM's room was right next to GARCIA's room. This was on Thursday night (8/19). GARCIA stated the UM invited her and ZARAGOZA in for a Miller High Life beer and then she and ZARAGOZA went back to their room. GARCIA stated it was just the UM in the room and nobody else. GARCIA stated she and ZARAGOZA were in the UM's room for about ten minutes, and they spoke to the UM about where they are from. GARCIA was asked what the UM's name is and she did not remember.

17. GARCIA stated she did not let anyone borrow or use her TOYOTA while they were in Mexico. GARCIA stated she did not see ZARAGOZA take her keys at any time. GARCIA stated ZARAGOZA is not involved in this type of illegal work and neither is she. I then told GARCIA the drugs were placed in her TOYOTA in the dash area. I stated someone would need access to her TOYOTA to place the drugs in there. GARCIA responded stated she never locked her balcony. GARCIA stated her purse was left in a drawer in the hotel room and she left her keys to the TOYOTA in her purse. GARCIA stated she didn't notice if anyone moved her purse or her keys while she was out of the room.

18. GARCIA, however, also stated the UM did not have key access to her (GARCIA's) hotel room. GARCIA stated the UM didn't go into her hotel room. GARCIA stated she met the UM near the pool area. GARCIA stated the UM was wearing dark blue shorts and a plain t-shirt. GARCIA stated the UM had a hat and sunglasses and a gold chain. GARCIA stated the UM spoke very little English. GARCIA stated the hotel room key was always in her possession. GARCIA stated she didn't talk much with the UM but maybe her boyfriend (ZARAGOZA) did.

19. I believe there is probable cause that GARCIA, ZARAGOZA and others were engaged in a conspiracy to import illegal drugs prior to their arrest on August 21, 2021. In light of the above facts and my experience and training, there is probable cause to believe that Defendants were using the Target Devices to communicate with others to further the importation of illicit narcotics into the United States. Accordingly, based upon my

experience and training, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of GARCIA and ZARAGOZA, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the Target Devices.  Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. There is probable cause to believe that additional evidence of GARCIA's and ZARAGOZA's contacts with other co-conspirators will be found in the **Target Devices** dating back to July 21, 2021.  Accordingly, I request permission to search the Target Devices for data beginning on July 21, 2021, up to and including August 21, 2021.

## METHODOLOGY

20.    It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic

data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21.     Following the issuance of this warrant, I will collect the **Target Devices** and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

Law enforcement has been unable to obtain this evidence through other means.

# CONCLUSION

23. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Devices** will yield evidence of Defendants' violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A-1 and A-2, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

                                    Special Agent Franco Polo
                                    Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this  14  day of October, 2021.

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A-1

PROPERTY TO BE SEARCHED

The following property is to be searched:

    iPhone 6s

    With no other identifying numbers or features

    FPF # 2021250300120602 Line Item 1

    ("**Target Device 1**")



currently in the evidence vault located at 2051 N. Waterman Ave. El Centro, California, 92243.

## ATTACHMENT A-2

PROPERTY TO BE SEARCHED

The following property is to be searched:

    iPhone 7

    With no other identifying numbers or features

    FPF # 2021250300120601 – Line Item 4

    ("**Target Device 2**")



currently in the evidence vault located at 2051 N. Waterman Ave. El Centro, California, 92243.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the Target Devices described in Attachments A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below. The seizure and search of the Target Devices shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from Target Devices will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of July 21, 2021, up to and including August 21, 2021:

a. tending to indicate efforts to import methamphetamine or some other federally controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or some other federally controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.